```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
:
DRYWALL TAPERS AND POINTERS OF  :
GREATER NEW YORK LOCAL UNION    :
1974, IUPAT, AFL-CIO,           :
:
                              Plaintiff,   :
:
           -v-                :
:
TOP ROCK INTERIORS, INC.,       :
:
                           Respondent.  :
:
------------------------------------------------------X

18-CV-7557 (VSB)

**OPINION & ORDER**

Appearance:

Lauren M. Kugielska
Barnes, Iaccarino & Shepherd LLP
New York, NY
*Counsel for Plaintiff*

VERNON S. BRODERICK, United States District Judge:

      Before me is the complaint of the Drywall Tapers and Pointers of Greater New York Local Union 1974, IUPAT, AFL-CIO to confirm and enforce an arbitration award against Top Rock Interiors, Inc. (the "Company") pursuant to § 301(c) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. Because I find that there is no genuine issue as to any material fact and no indication in the record that any grounds for vacating or modifying the arbitration award exist, the petition is GRANTED and the arbitration award is confirmed.

**I.    Background**

      Drywall Tapers and Pointers of Greater New York Local Union 1974, IUPAT, AFL-CIO ("the Union") is a labor union and a local constituent of District Council 9, International Union of Painters and Allied Trades, which maintains its principal office in New York City. (Pl.'s 56.1

¶ 1.)[1] The Union entered into a collective bargaining agreement, entitled the Trade Agreement, with the Drywall Taping Contractors' Association of Greater New York and the Association of Wall-Ceiling & Carpentry Industries of New York, Inc. (together, "the Associations"). (Pl.'s 56.1 ¶ 3; Kugielska Affirm. ¶ 4; Trade Agmt. 1; Drew Decl. ¶ 2.)[2] The Trade Agreement established the terms and conditions of "all tapers', finishers', and pointers' work . . . performed within New York City and parts of Nassau County" for any employer that is a member of one of the Associations. (Trade Agmt. 1.)

Top Rock Interiors, Inc. ("Top Rock"), is a New York corporation with its principal place of business in New York City, (Pl.'s 56.1 ¶ 2.). Top Rock and the Union entered into an Independent Agreement that incorporated the majority of the Trade Agreement, making its "terms and provisions . . . binding as between the Union" and Top Rock, with certain exceptions not relevant here. (Trade Agmt., Appx A.)[3]

The CBA established a Joint Trade Board ("Joint Board") composed of three members of the Associations and three members of the Union. (Trade Agmt. Art. XIII § 1(d).) Under the CBA, members of the Associations were to register all jobs with the Joint Board within twenty-four (24) hours before commencing work. (*Id.* Art. XI § 1.) Members were also required to report to the Union if they were hiring a non-Union worker, and if so, the non-Union worker was required to register with the Union before beginning work. (*Id.* at Art. I § 5(c).)[4] Failure to

---

[1] "Pl.'s 56.1" refers to Plaintiff's/Petitioner's Local Rule 56.1 Statement, filed on November 7, 2018. (Doc. 21.)

[2] "Kugielska Affirm." or "Kugielska Affirmation" refers to the Affirmation of Lauren M. Kugielska in Support of Plaintiff's/Petitioner's Summary Judgment Motion, filed on November 7, 2018. (Doc. 18.) "Trade Agmt." or "Trade Agreement" refers to the Trade Agreement between the Union and the Associations, filed on November 7, 2018, as Exhibit B to the Kugielska Affirmation. (Doc. 18-2). "Drew Decl." or "Drew Declaration" refers to the Declaration of John Drew, president of District Council 9, filed on November 7, 2018. (Doc. 19.)

[3] Because the Independent Agreement incorporates the Trade Agreement, they together constitute the collective bargaining agreement at issue in this case ("CBA"); however, I cite to the Trade Agreement for all substantive provisions discussed in this Opinion & Order.

[4] Several of Plaintiff's supporting documents, including the Award itself and the Complaint, cite to Article XIII,

2

register a job, if a first-time offense, would result in a fine of $1,500, while a second-time offense would result in a fine of $2,000. (*Id.* Art. XIII § 6.) A first-time violation of the rule against employing a non-Union worker would result in a fine of $2,000, and a second violation would result in a fine of $5,000 for each non-union worker, plus other consequences. (*Id.*)

The CBA also outlined a grievance procedure, pursuant to which all complaints, other than employee grievances, were to be presented to the Joint Board or another body, the Joint Trade Committee. (*Id.* Art. XII § 1(e).) The "decisions and findings of the Joint Board, including any imposition of penalties, [were] final and binding upon the signatory contractors and the Union, all members of each thereof and all interested parties." (*Id.* Art. XIV § 6.) At all times relevant, the parties were governed by these provisions of the CBA. (Pl.'s 56.1 ¶ 3; Trade Agmt. Appx. A.)

Top Rock failed to register a drywall taping job performed on October 23, 2017, and hired non-Union employees to perform it. (Pl.'s 56.1 ¶ 4; Award 2).[5] This conduct was reported to the Joint Board by an observer, and the Union subsequently served a Notice of Intention to Arbitrate on Top Rock on April 5, 2018. (Pl.'s 56.1 ¶ 5; Award 1.) The Joint Board held a hearing on April 20, 2018, at which the observer and a representative of Top Rock were present. (Pl.'s 56.1 ¶ 5; Award at 1, 2). The Joint Board "deliberated and found the Employer guilty for failing to register a job with the Union," and directed Top Rock to pay a fine of $2,000 within ten days of receipt of the decision. (Award 2.) Following the hearing, a written copy of the

---

Section 11, of the Trade Agreement as the source of the provisions requiring registration of jobs and prohibiting hiring of non-Union employees for jobs. (*See* Compl. ¶¶ 10, 16; *id.* Ex. A). However, this section does not exist. (*See* Trade Agmt. at pp. 25.) Accordingly, I cite to the applicable provisions where they actually appear in the Trade Agreement.

[5] "Award" refers to the Revised Decision of the Joint Trade Board, originally filed on August 20, 2018, as Exhibit A to the Complaint. (Doc. 1, at 5–13.) The Complaint was in turn annexed as Exhibit A to the Kugielska Affirmation and filed on November 7, 2018. (Doc. 18-1, at 6–14.)

Award was delivered to Top Rock. (Pl.'s 56.1 ¶ 8.) Top Rock has not made payment nor has it sought to vacate or modify the Joint Board's decision. (Pl.'s 56.1 ¶ 9–10.)

**II.     Procedural History**

The Union commenced this action by filing a complaint on August 20, 2018. (Doc. 1.) The Complaint requests the Court enter an order confirming the arbitration award and awarding the Union reasonable attorneys' fees along with costs and disbursements. (*Id.*)

The Summons in a Civil Action and Complaint were served on Top Rock on August 21, 2018. (*See* Doc. 7.) The Union then sought and obtained a certificate of default as to Top Rock. (Doc. 10.) On October 23, 2018, the Union filed a proposed order to show cause why a default judgment should not be issued against Top Rock. (Docs. 11–14.)

On October 30, 2018, I entered an order denying the Union's motion for default judgment and directing the Union to file and serve any additional materials in support of its Complaint by November 7, 2018, with Top Rock to serve any opposition by November 30, 2018, and the Union to file any reply by December 14, 2018. (Doc. 15.)

The Union subsequently filed a motion for summary judgment requesting "an Order . . . confirming the arbitration award," (Doc. 17), along with a Rule 56.1 statement, (Doc. 21), a memorandum of law, (Doc. 20), an affirmation with exhibits, (Doc. 18), and a declaration, (Doc. 19). The motion and supporting documents were served by mail upon Top Rock on November 7, 2018. (*See* Doc. 22.) To date, Top Rock has not answered the Complaint or otherwise appeared in this case.

### III. Legal Standards

#### A. *Labor Management Relations Act*

"Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). A court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

"Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Coastal Envtl. Grp., Inc.*, No. 1:16-cv-6004-GHW, 2016 WL 7335672, at *2 (S.D.N.Y. Dec. 16, 2016) (internal quotation marks omitted). "Because the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of arbitration awards, an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." *Local 97, Int'l Bhd. of Elec. Workers, A.F.L.-C.I.O v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) (internal quotation marks omitted). Thus, "barring exceptional circumstances—such as fraud or an arbitration decision that violates public policy—a reviewing court must confirm an arbitration award so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. A to E Inc.*, No. 16-cv-4455 (CM), 2018 WL 1737133, at *4 (S.D.N.Y. Mar. 20, 2018) (internal quotation marks omitted).

5

## B. *Summary Judgment*

"[D]efault judgments in confirmation/vacatur proceedings are generally inappropriate." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Instead, an unanswered petition to confirm an arbitration award is to be treated "as an unopposed motion for summary judgment." *Id.* at 110. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

However, "[e]ven unopposed motions . . . must 'fail where the undisputed facts fail to

show that the moving party is entitled to judgment as a matter of law.'" *D.H. Blair*, 462 F.3d at 110 (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). In other words, "the showing required to avoid confirmation is very high." *Id.*

### IV. Discussion

#### A. *Confirmation of the Award*

As an initial matter, since Defendant has failed to respond, I consider the facts asserted in Plaintiff's 56.1 Statement to be undisputed. Fed. R. Civ. P. 56(e)(2). I have reviewed the record in this matter—including Plaintiff's Rule 56.1 Statement, the Complaint, the Kugielska Affirmation, the Drew Declaration, the Trade Agreement, and the Award, and find that no genuine issues of material fact exist in this case. Furthermore, there is no indication that the Award was procured through fraud or dishonesty or that the Joint Board was acting in disregard of the CBA or outside the scope of its broad authority to resolve grievances. Rather, the record indicates that the Joint Board based its award on undisputed evidence that Top Rock failed to register a job with the Union, violating the clear language of the CBA. (*See* Award; Trade Agmt. Art. XI § 1, Art. I § 5(c).) The CBA explicitly set forth the fines imposed for these violations, (Trade Agmt. Art. XIII § 6), and the Joint Board accordingly imposed a fine of $2,000, (Award 2).

Accordingly, Plaintiff's motion is granted and the Award is confirmed. *See, e.g.*, *Trs. for Mason Tenders Dist. Council Welfare Fund v. DCM Grp., L.L.C.*, No. 7:13-cv-01925 (NSR), 2017 WL 384690, at *4 (S.D.N.Y. Jan. 25, 2017) (confirming arbitration award brought under LMRA § 301 where respondent did not oppose petition and record supported arbitrator's findings).

### B. *Attorneys' Fees, Costs, and Disbursements*

Although the Complaint seeks attorneys' fees, costs, and disbursements, Plaintiff's motion for summary judgment and memorandum of law in support only request confirmation of the arbitration award. (*See* Pl.'s Mot. 1; Pl.'s Mem. 5.)[6] Accordingly, I do not consider Plaintiff's request for fees and costs on the instant motion.

### V. Conclusion

For the foregoing reasons, Plaintiff's motion is GRANTED. The Award is confirmed, and the Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant in the amount of $2,000, plus post-judgment interest in accordance with 28 U.S.C. § 1961(a).

The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated: September 30, 2019
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge

---

[6] "Pl.'s Mot." refers to Plaintiff's Notice of Motion, filed on November 7, 2018. (Doc. 17.)